# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE DANTZLER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )  CIVIL NO. 10-cv-180-JPG |
| | ) |
| LISA HOLLINGSWORTH, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This cause is before the Court on Petitioner's motion to proceed *in forma pauperis* (Doc. 2). Based on the financial information provided with his motion, Petitioner's motion to proceed *in forma pauperis* (Doc. 2) is **GRANTED**.

Also before the Court is Petitioner's application for a writ of habeas corpus (Doc. 1). Petitioner, an inmate in the United States Penitentiary located in Marion, Illinois (USP-Marion), brings this habeas corpus action pursuant to 28 U.S.C. § 2241 to challenge his 2002 conviction in the United States District Court for the Southern District of Illinois before the Honorable G. Patrick Murphy, United States District Judge. Petitioner bring his challenge based on the Seventh Circuit's decision in *Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009).

Rule 4 of the Rules Governing § 2254 Cases in United States District Courts provides that upon preliminary consideration by the district court judge, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be

notified." Rule 1(b) of those Rules gives this Court the authority to apply the rules to other habeas corpus cases. After carefully reviewing the petition in the present case, the Court concludes that Petitioner is not entitled to relief, and the petition must be dismissed.

## BACKGROUND

In early 2002, Petitioner was indicted for being a felon in possession of a firearm in violation 18 U.S.C. § 922(g). *United State v. Dantzler*, Case No. 02-cr-30023 (S.D. Ill.). Petitioner's 1984 Illinois conviction for armed robbery conviction was the predicate felony alleged in the § 922(g) count. *Id.* (Criminal Complaint filed February 20, 2002). Desiring to keep the facts and circumstances surrounding his 1984 Illinois conviction from the jury, Petitioner stipulated, in writing, "that prior to February 18, 2002, Defendant Willie G. Dantzler had been convicted of a crime punishable in excess of one year, that is, a felony." *Id*. (Stipulation of Facts, filed June 12, 2002). At trial, the jury was instructed as follows:

> In this case, the parties have stipulated that on or about November 15, 1984, in the Circuit Court, in and for St. Clair Count, Illinois, defendant Willie G. Dantzler was convicted of a crime punishable by imprisonment exceeding one (1) year.

Trial Transcript, June 12 and 13, 2002, pg I-135: 10-14, filed Aug. 29, 2003. The jury found Petitioner guilty of being a felon in possession of a firearm as charged in the indictment.

After the trial, Petitioner moved to have his conviction vacated on the basis that the Illinois Department of Corrections (IDOC) had sent him a letter restoring his civil rights with respect to the 1984 conviction. In relevant part, the letter reads:

> We have been advised by the Field Services Office of the Illinois River Correctional Center that you have complete the maximum of your sentence as of 03/23/2001. On this date, your obligations to the Department ceases.
>
> We are pleased to inform you of the restoration of your right to vote and to hold offices created under the Constitution of the State of Illinois. You also have the right

>to restoration of the licenses granted to you under the authority of the State of Illinois if such license was revoked solely as a result of your conviction, unless the licensing authority determines that such restoration would not be in the public interest.

(Defendant's First Amended Motion to Vacate Conviction under 18 U.S.C. § 922(g)(1), Attachment, filed March 10, 2003). The letter did *not* inform Petitioner that the restriction against him possessing firearms still continued.

In his motion to vacate, Petitioner argued that the letter restored his civil rights and that he received the letter in March 2001 - well before the offense for which he was convicted was committed. Furthermore, because the letter failed to state that the firearms restrictions continued, Petitioner argued that he had been trapped into reasonably thinking that he was no longer disqualified from possessing a gun by virtue of the 1984 Illinois conviction. Accordingly, Petitioner claimed that the 1984 Illinois armed robbery conviction could not be used as a predicate felony for the felon in possession conviction. On April 15, 2003, Judge Murphy held a hearing on Petitioner's motion to vacate.[1] One of the issues addressed at the hearing was the date on which Petitioner received the IDOC's letter. The date on which Petitioner received the IDOC's letter appears to have been in question because Petitioner allegedly lost the *original* letter he claimed to have received. As such, Petitioner was able to supply only a *copy* of the letter he obtained from the IDOC. The copy, however, was dated May 6, 2002, which is date *after* the date on which the offense was committed. At the hearing, Petitioner introduced evidence suggesting that when a former state convict, like Petitioner, requests a copy (or *replacement)* letter - having lost or misplaced the original - the copy/replacement letter is dated as of the date the copy/ replacement letter is generated (in this case May 6, 2002) - not the date on the original letter. At the hearing,

---

[1] While the Court's docket sheet indicates that the hearing was, in fact, held on April 15, 2003, the Court's transcript lists the hearing date as May 15, 2003.

Judge Murphy noted that Petitioner's claim that he had received the letter *prior* to the date of the offense was "reasonable." Transcript of Hearing on Motion to Vacate, April 15, 2003, pg. 18: 15-19, filed July 5, 2005.

Judge Murphy, however, found that even if Petitioner had received the letter prior to the date offense was committed, the letter did not "trap" Petitioner into reasonably believing that he was no longer disqualified from possessing a gun by virtue of the 1984 Illinois conviction. Transcript of Hearing on Motion to Vacate, April 15, 2003, pg. 19: 24-25; pg. 20: 1-6, filed July 5, 2005. Therefore, Judge Murphy denied Petitioner's motion to vacate his conviction. Transcript of Hearing on Motion to Vacate, April 15, 2003, pg. 19: 7, filed July 5, 2005.

On May 13, 2003, Judge Murphy sentenced Petitioner as an armed career criminal, 18 U.S.C. § 924(e), to 210 months' imprisonment. Petitioner's 1984 Illinois conviction was used as one of the three convictions used to sentence him as an armed career criminal.

Petitioner appealed both his conviction and his sentence. *United States v. Dantzler*, No. 03-2358(7th Cir.). Specifically, Petitioner argued that his 1984 Illinois conviction could not serve as a predicate for either the underlying § 922(g)(1) offense or his enhanced sentence as an armed career criminal. Petitioner again argued that the letter he received from the IDOC restored his civil rights and "trapped" him into reasonably believing that he was no longer disqualified from possessing a gun by virtue of the 1984 Illinois conviction. The Seventh Circuit Court of Appeals affirmed Petitioner's conviction and sentence, rejecting Petitioner's argument that the letter restored his civil rights. Specifically, the Court of Appeals held that Petitioner's letter was "worded precisely and . . . could not have misled a reasonable person into thinking he could possess a gun." *United States v. Dantzler*, No. 03-2358, slip op. at 4 (7th Cir. Dec. 27, 2005).

Alternatively, the Court of Appeals held that even if Petitioner's letter could be read to restore his civil rights, " the letter came too late to explain why he might have been carrying a gun in February 2002 . . . [because] Dantzler admitted in the district court that he did not receive the letter until after he was arrested with the gun." *Id*.   Citing to the hearing conducted by Judge Murphy on April 15, 2003, Petitioner contends this portion of the decision by the Court of Appeals is not supported by the record.  Petitioner contends that he never made such an admission.

Finally, the Court of Appeals held that because Petitioner had stipulated to having a "qualifying predicate felony," *id.,* the jury was entitled to rely on his stipulation in finding him guilty of the predicate offense.  *Id*.

However, with respect to his enhanced sentence as an armed career criminal, the Court of Appeals noted:

> Since Dantzler stipulated only to having a qualifying felony and not specifically to the 1984 conviction, the stipulation could not establish the third felony necessary to support enhancement under § 924(e).  If the letter had restored Dantzler's "civil rights" in time, we would have remanded for resentencing.

*Id*. at 4 n. 2.

The Seventh Circuit affirmed both Petitioner's conviction and his sentence.  Petitioner sought, but was denied, a writ of certiorari to the United States Supreme Court.

On November 10, 2007, Petitioner filed a motion to vacate, correct or set aside sentence pursuant to 28 U.S.C. § 2255.  *Dantzler v. United States*, Case No. 07-cv-824 (S.D. Ill.).  Judge Murphy, however, summarily dismissed the motion as time barred.  Petitioner was denied a certificate of appealability by the Seventh Circuit Court of Appeals.  *Dantzler v. United States*, No. 09-1273 (7th Cir. July 10, 2009).

On September 10, 2009, the Seventh Circuit Court of Appeals decided *Buchmeier, supra,,*

a case that also involves a federal criminal defendant who, like Petitioner, received a letter from the IDOC informing him that some of his rights had been restored after being discharged from his state convictions. Petitioner contends that the letter he received from the IDOC and the letter at issue in *Buchmeier* are virtually identical. In *Buchmeier*, however, the Seventh Circuit found that - based on the letter at issue - the state convictions did not count for federal purposes. *Buchmeier*, 581 F.3d at 567.

Petitioner contends that the decision in *Buchmeier* is a break with the Seventh Circuit's precedents. As such, Petitioner contends that *Buchmeier* establishes that Petitioner is "actually innocent" of being a felon in possession of a firearm and/or an armed career criminal.

## **DISCUSSION**

Normally a person may challenge his federal conviction only by means of a motion brought before the sentencing court pursuant to 28 U.S.C. § 2255, and this remedy normally supersedes the writ of habeas corpus. A § 2241 petition by a federal prisoner is generally limited to challenges to the execution of the sentence. *Valona v. United States,* 138 F.3d 693, 694 (7th Cir. 1998); *Atehortua v. Kindt,* 951 F.2d 126, 129 (7th Cir. 1991). However, a petition challenging the conviction may be brought pursuant to 28 U.S.C. § 2241 if the remedy provided by 28 U.S.C. § 2255 is inadequate or ineffective. *See also Waletski v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994) ("prisoner who challenges his federal conviction or sentence cannot use [§ 2241] at all but instead must proceed under 28 U.S.C. § 2255.").

Petitioner apparently contends that he is one of those for whom the § 2255 motion is inadequate or ineffective to test the legality of his detention. As noted above, Petitioner's one and only attempt at pursuing relief under § 2255 was denied as untimely. Furthermore, it appears, he

does not meet the criteria under 28 U.S.C. § 2255(h) for filing a second or successive § 2255 motion. However, the fact that Petitioner may be barred from bringing a second § 2255 petition is not, in itself, sufficient to render it an inadequate remedy. *In re Davenport,* 147 F.3d 605, 609-10 (7th Cir. 1998) (§ 2255 limitation on filing successive motions does not render it an inadequate remedy for a prisoner who had filed a prior Section 2255 motion). Further, "[f]ailure to comply with the requirements of the § 2255 statute of limitations is not what Congress meant when it spoke of the remedies being 'inadequate or ineffective to test the legality of his detention.'" *Montenegro v. U.S.*, 248 F.3d 585 (7th Cir. 2001), *overruled on other grounds*, *Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001).[2] *See also Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000) ("Neither will a claim of procedural bar suffice to demonstrate that § 2255 relief is inadequate or ineffective."); *United States v. Barrett*, 178 F.3d 34, 49- 50 (1st Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000); *Triestman v. United States*, 124 F.3d 361, 376 (2d Cir. 1997) (noting that § 2255's substantive and procedural barriers by themselves do not establish that § 2255 is inadequate or ineffective); *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997). Instead, a petitioner proceeding under § 2241 must demonstrate the inability of a § 2255 motion to cure the defect in the conviction.

In *Davenport*, the Seventh Circuit considered the meaning of "inadequacy" for purposes of § 2255. The Circuit stated that "[a] procedure for post-conviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as ***having been imprisoned for a nonexistent offense***." *Davenport,* 147 F.3d at 611 (emphasis added). The Seventh Circuit later

---

[2] *Ashley* overruled only Part III of *Montenegro*. *Ashley* held that a decision that a right initially recognized by Supreme Court is retroactively applicable to cases on collateral review, as will begin one-year limitations period under Antiterrorism and Effective Death Penalty Act (AEDPA), can be made by a Court of Appeals or a district court, as well as by Supreme Court. *Ashley*, 266 F.3d at 674.

clarified this standard, stating that actual innocence is established when a petitioner can "admit everything charged in [the] indictment, but the conduct no longer amount[s] to a crime under the statutes (as correctly understood)." *Kramer v. Olson*, 347 F.3d 214, 218 (7th Cir. 2003).

Such is not the case here.  Petitioner does not suggest that the charged conduct is no longer a crime.  To the contrary, Petitioner asserts that notwithstanding his 1984 Illinois conviction, he has a letter that - for federal purposes - makes that 1984 Illinois conviction irrelevant.  But, as noted by the Seventh Circuit in Petitioner's direct appeal, "even if Dantzler's 1984 conviction ceased to qualify under § 921(a)(20) after he received the letter, the jury was still entitled to rely on his stipulation that he did have a qualifying predicate felony." *United States v. Dantzler*, No. 03-2358 slip op. at 4.  Furthermore, Petitioner's *written* stipulation was only to having a qualified felony and not specifically the 1984 Illinois conviction.

As further noted by the Seventh Circuit, while the Petitioner's written stipulation is sufficient to support his conviction for being a felon in possession of a firearm, it may not be sufficient to support his enhanced sentence as an armed career offender if (a) the IDOC's letter restored Petitioner's civil rights (as Petitioner claims is the law following *Bucheit*) and (b) the IDOC's letter was received in time (as Petitioner contends it was and Judge Murphy determined was a "reasonable" argument).  *Id.* at 4 n.2.  But, being innocent of being "an armed career criminal" is innocence only in a "technical sense," which is insufficient to show that § 2255 is "inadequate or ineffective" and, thus, allow a § 2241 petition by a federal prisoner. *In re Davenport*, 147 F.3d 605, 609-610 (7th Cir. 1998).

### DISPOSITION

Therefore, § 2241 cannot provide Petitioner with the desired relief, and this action is

summarily **DISMISSED** with prejudice.  All pending motions are denied as moot.

**IT IS SO ORDERED**.

**Dated: August 25, 2010.**

                                             **s/ J. Phil Gilbert**
                                             **U. S. District Judge**